IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOSEPH REHEISER,

      Plaintiff,

vs.                                                    CASE NO.  5:05cv263/RS

THE TERMINIX INTERNATIONAL COMPANY,
LIMITED PARTNERSHIP,

      Defendant.
_____/

ORDER

      Before the Court is Defendant's Motion for Summary Judgment (Doc. 44). The Motion for Summary Judgment is granted.

I. FACTS

      Plaintiff Joseph Reheiser (Reheiser) worked at Terminix, a pest control company, for approximately twenty years. During the last few years of his employment, Reheiser served as branch manager of Terminix's Pensacola branch. In 1999, Reheiser began to suffer anxiety attacks and was granted several months paid leave to seek medical treatment. In December 2000, Terminix bought the Pensacola branch from its franchisee. In June 2001, after returning from his medical leave of absence, Reheiser wrote two letters to his divisional vice president, Tom Brackett, stating that he was suffering harassment at work because of his perceived disability. In the fall of 2001, Terminix's regional human resource managers were notified that Terminix required all of its employees to sign a new Employment Agreement and an Arbitration Agreement (Agreements). The Arbitration Agreement contained a new provision that required

1

mandatory arbitration for claims brought by a Terminix employee against the company. At some point in October 2001, Reheiser was notified by Terry Reeves, a regional manager for Terminix, that all Terminix employees would be required to sign the Agreements "pretty quickly" or face termination. (Doc. 47, Reheiser Deposition, 86:10-14). Reheiser held an employee meeting on November 1, 2001, during which the employees were informed of the Agreements and given the opportunity to sign them. Reheiser supervised the signing of the Agreements by all of his employees and co-signed the documents on behalf of Terminix. Reheiser never signed his own Arbitration Agreement. On November 6, 2001, Reeves met with Reheiser at the Pensacola office. During their discussion, Reeves told Reheiser that "he was required to sign the [Arbitration Agreement] as a condition of continued employment and that if he refused, his employment would be considered terminated." (Doc. 15, Declaration of Terry Reeves, ¶ 6). Reheiser refused to sign the Arbitration Agreement, and Reeves terminated him immediately.

Subsequently, Reheiser filed a Complaint in Florida state court contending that he had suffered employment discrimination at Terminix because of his perceived disability, including harassment and termination, and retaliation, all in violation of the Florida Civil Rights Act, Florida Statutes §§ 760.01-760.11. Terminix properly removed the case to this Court.

## II. DISCUSSION
### A. The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "An

issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton, 965 F.2d at 998 (citing Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356).

     The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 106 S. Ct. at 2512.  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)).  However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251, 106 S. Ct. at 2511).

     If the movant satisfies its initial burden under Rule 56(c) by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).  Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats &

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton, 965 F.2d at 998 (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S. Ct. at 2513 (citing Adickes, 398 U.S. at 158-59, 90 S. Ct. at 1609). In light of the summary judgment standard, this Court will apply the relevant substantive law to the facts of the case.

### B.  Disability Discrimination

Reheiser claims that Terminix fired him because of his perceived disability. It is well established that "disability-discrimination claims under the Florida Civil Rights Act are analyzed under the same framework as A[merican] D[isabities] A[ct] claims." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220,1224 n.2 (11th Cir. 2005); see also, Rizo v. State of Alabama Dept. Of Human Resources, 2007 WL 278587, *2 (11th Cir. 2007)(holding "[t]his Court applies the law developed in Title VII, ADEA, and ADA cases interchangeably"). In order to establish a prima facie case of employment discrimination under the American Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., "a plaintiff must demonstrate that (1) he has a disability, (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220,1226 (11th Cir. 2005)(citations omitted). Terminix has chosen to rely solely on its argument that its actions were legitimate and not pretextual. Therefore, the Court assumes that Reheiser has met his burden of establishing a prima facie case of discrimination.

Once a plaintiff has established a prima facie case for his discrimination claim, a defendant must articulate a legitimate, nondiscriminatory reason for its actions. In showing that it had a legitimate, nondiscriminatory reason for its actions, the defendant's burden is "exceedingly light." Perryman v. Johnson Prods. Co. Inc., 698 F.2d 1138, 1142 (11th Cir.1983) (citing Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094). "The

defendant only needs to produce evidence of a reason for its decision; it does not need to prove that it was actually motivated by that explanation." Sermons v. Fleetwood Homes of Georgia, 227 F.Supp.2d 1368, 1380 (citing Burdine, 450 U.S. at 254, 101 S.Ct. at 1094). "[The proffered reason] is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine 450 U.S. at 254-55, 101 S.Ct. at 1094. The defendant's burden at this stage of the analysis is "merely one of production, not of proof." Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir.1982). "As long as the defendant articulates its reason with some specificity so that the plaintiff has a 'full and fair opportunity to demonstrate pretext,' the defendant's burden has been met." Sermons, 227 F.Supp.2d at 1380 (quoting Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1095). Terminix claims that it fired Reheiser because he did not sign the arbitration agreement. It is undisputed that Reheiser did not sign the agreement, and that Reheiser was fully aware that all employees in the branch had to sign the agreement or face termination. Therefore, it is clear that Terminix has met its burden.

"Once a defendant offers a legitimate, nondiscriminatory reason for its actions, the plaintiff must attack that reason 'head on and rebut it' so as to show that the reason is really pretext for discrimination." Sermons, 227 F.Supp.2d at 1381 ( quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir.2000)). Pretext can be established by evidence which "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.' " Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994). Stated differently, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 256, 101 S.Ct. at 1095). The proffered explanation is unworthy of belief if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could disbelieve it. Combs v. Plantation Patterns, Meadowcraft,

Inc., 106 F.3d 1519, 1538 (11th Cir.1997) (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996)) (citation and internal quotation marks omitted). In order to prove pretext, the plaintiff may offer "direct evidence of discrimination in the form of statements and admissions or by circumstantial evidence in the form of comparative or statistical evidence." Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir.1989) ( citing Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir.1985)). The plaintiff may also establish pretext by showing that the employer did not rely on the proffered explanations for its actions. See Israel v. Sonic-Montgomery FLM, Inc., 231 F.Supp.2d 1156, 1162 (M.D.Ala.2002) (citing Chapman, 229 F.3d at 1024). Reheiser does not meet his burden of establishing that a reasonable trier of the facts could find that Terminix's explanation for his termination was pretextual.

As evidence of pretext, Reheiser claims that Terminix "commenced a campaign of harassment and discrimination against" him. (Doc.1, Complaint, ¶20). As evidence of discrimination, Reheiser argues that other employees at Terminix were allowed to continue working without signing the arbitration agreement. As a result, Terminix's requirement to sign the arbitration agreement or face termination was not "applied equally", thus demonstrating pretext. Reheiser primarily relies on the supporting testimony of his former regional manager, Leonard Arrant, who replaced Reheiser after his termination. Arrant admits that when he arrived at the Pensacola branch he was told that Reheiser was fired because he did not sign the arbitration agreement. (Doc. 56, Arrant Depo., 11:1-6). However, at some point thereafter, Arrant received a memorandum from Terminix listing "more than 20" individuals in the region who had not signed the arbitration agreement, and yet were still employed at Terminix. (Doc. 56, Arrant Depo., 13:1-9). The purpose of the memorandum was to identify employees who still needed to sign the agreement. One of the employees on the list, Chris Toomey, was the regional manager for Terry Reeves, the individual who terminated Reheiser. In addition, Reheiser's claim that Sonny Atkinson, a Terminix employee in Alabama, did not sign the agreement (Doc. 47, Reheiser Depo., 87:9-19) was confirmed by Arrant. (Doc. 56, Arrant Depo., 13:17-19). Specifically, Arrant stated that Atkinson's name was among those listed in the Terminix memorandum. (Doc. 56, Arrant Depo., 13:17-19).

6

Arrant concluded that "[i]t became apparent to me then that Joe's termination was not relevant to his not signing the employment agreement because of all the people who had not signed it, as well." (Doc. 56, Arrant Depo., 14:14-18).

Terminix claims that Reheiser does not provide any evidence of "similarly situated" employees who were not required to sign the agreement. Terminix does admit that there were employees who did not sign the agreement and continued to work, yet it states that these were "oversights" on its part, not evidence of pretext. Rosalyn Feemster, Terminix's Director of Human Resources for the region encompassing the Pensacola branch, states that the human resource files located at its Memphis headquarters were audited "on occasion...to ensure that each employee's file contained copies of all pertinent documents including an arbitration agreement." (Doc. 46, Feemster Declaration, ¶ 7). If a document was found to be missing from an employee's file (e.g. the arbitration agreement), the employee was placed on a list that was distributed to regional human resources managers such as Feemster. Feemster states that she would take the list and provide it to the appropriate branch manager to ensure that the employee in question executed the required document and returned it to Feemster or to the corporate office directly. (Doc. 46, Feemster Declaration, ¶ 8-9).

As for the employees that Reheiser cites as comparators, it is undisputed that Reheiser cannot provide evidence of any employee who refused to sign the arbitration agreement after being asked to do so, and yet remained employed by Terminix. According to Arrant, Chris Toomey signed the agreement when he was asked to do so (Doc. 56, Arrant Depo. 12:11-18), and there is no evidence that the other employee, Sonny Atkinson, failed to sign when presented with the agreement. It is reasonable that in a corporation as large as Terminix several employees will inadvertently fail to sign a particular document, particularly when every employee was asked to sign a number of documents during a short time period. It is also reasonable that a branch manager may not realize that an employee failed to sign a particular document, particularly when the branch manager is reviewing documents from several employees at one time. Thus, Feemster's explanation does not show any pretext or inconsistency by Terminix in explaining its stated reason for terminating Reheiser. If Reheiser were able to provide

any evidence that Terminix knowingly allowed employees to continue working who <u>refused</u> to sign the arbitration agreement or any other required document, there is no doubt that he would have satisfied his burden. However, Reheiser admittedly has not presented any such evidence.

As additional evidence of pretext, Reheiser states that he faced harassment from several people at Terminix, including his supervisor, Jerry Morrow. Reheiser alleges the following specific incidents of harassment: 1) Morrow "tried to coerce him into taking an extended period of time off work." When Reheiser expressed his disagreement with Morrow, he claims Morrow tried to intimidate him by stating that "in effect, that [Reheiser] had backed him into a corner and really 'pissed him off,'" and that Reheiser "had better be able to do his job 'or else'"; 2) Unfounded complaints from management regarding his job performance, including under-profitability; 3) Discrimination in sick leave and attendance policy; 4) Suspension of driving privileges "because of supposed medication concerns, not supported by medical evidence"; 5) Allegations of misconduct, including philandering with one of the secretaries in the office; and 6) Continuous and widespread remarks, rumors, and jokes within the company about Reheiser's illness and medication.

Leonard Arrant provides limited support for Reheiser's contentions. First, Arrant states that he "heard a lot of rumors about Joe and his medication and his medical problems and people making fun of him about going to meetings and him not keeping up or being over medicated..." (Doc. 56, Arrant Depo., 7:15-18). Arrant also contends that Reheiser was written up for not keeping toilet paper in the office, an insignificant and minor issue. In addition, Arrant states that while he was a regional manager, he heard about people in Reheiser's region "question[ing] [] [Reheiser's] mental capacity" in addition to hearing "talk" that Reheiser was mentally disabled from doing his job properly. (Doc. 56, Arrant Depo. 15:13-23). Arrant also contends nothing he reviewed in Reheiser's personnel file indicated that Rehesier's job performance was suffering. In fact, he states that Reheiser's "numbers...were as high as anyone in the companies and Joe certainly was not a backseat manager or in the back of the pack." (Doc. 56, Arrant Depo. 17:21-24).

Reheiser wrote two formal letters in June 2001 to Terminix's divisional vice president, Tom Brackett, to complain about harassment and discrimination. (Doc. 55, Exhibits A and B). Brackett and Reheiser discussed his complaints during a phone call on June 21, 2001. On July 5, 2001, Brackett wrote a letter to Reheiser indicating that a review process would commence in order to "develop all known facts about this situation."(Doc. 55, Exhibit C). Reheiser claims that despite these assurances, nobody from Terminix contacted him again about these issues or conducted an investigation.

As for Reheiser's allegations of harassment, Terminix does not deny that the incidents took place. Rather, Terminix claims (and the Court agrees) that the evidence in the record does not provide sufficient evidence for a reasonable jury to conclude that Terminix's explanation for terminating Reheiser was pretextual. As for Morrow's alleged demands that Reheiser take more time off work, such statements (even in the manner in which they were made) do not indicate any discriminatory animus. Rather, if anything, those statements evidence a concern that Reheiser regain his full health before returning to work. With the exception of a similar claim he made to Brackett in his second letter of complaint (Doc. 55, Exhibit B), Reheiser's contentions that his doctor wrote two notes indicating he was able to work find no support in the record.  As for Reheiser's job performance, there is evidence in the record that Reheiser's job performance had declined beginning in April 2001 and continued through October 2001. (Doc. 55, Exhibits I, J). Reheiser refused to sign his performance reviews in April or June. (Doc. 55, Exhibits I, J). Notably, these two written reviews occurred prior to Reheiser's initial letter to Brackett. Arrant's testimony does support Reheiser's claim that his numbers did not decrease. However, Arrant did not claim to have exhaustively reviewed Reheiser's file or have access to all the documents in his file.[1] In addition, Reheiser had every opportunity during the discovery process to obtain all of the

---

[1] Arrant states that he reviewed "some" of Reheiser's file. (Doc. 56, Arrant Depo. 8:11-12, 16:23-25).

Terminix records whose accuracy he questioned.[2] For reasons that do not appear in the record, he chose not to do so. While there were memorandums from Reheiser's superiors commending the "Allied region" for its performance, none of them mentioned Reheiser's branch in particular. (Doc. 55, Exhibits F, G, H). Based on the scant evidence in the record, a reasonable jury could not conclude that Reheiser's branch contributed to the overall success of the region. As for Reheiser's allegations of discriminatory sick leave and attendance, Reheiser provides no specific evidence that any other employee in his situation was treated differently. The Eleventh Circuit has consistently held that "conclusory allegations without specific supporting facts have no probative value." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000).

As for the suspension of his driving privileges, it is not inconsistent for Terminix to decide that an employee under new medication should not be driving. From a safety and liability standpoint, such a decision is quite logical. Despite his contention that Terminix allowed other employees to retain their driving privileges despite taking higher doses of the same medication as Reheiser, there is no evidence in the record to support his contention.(Doc. 55, Exhibit B). Finally, while the jokes concerning Reheiser's disability and the allegations of philandering are certainly tasteless, there is nothing in those remarks that would lead a reasonable jury to conclude that Terminix's decision to fire him was based on anything other than his decision to not sign the arbitration agreement.

In response to Reheiser's contention that no investigation into his allegations of harassment took place, Rosalyn Feemster indicates that she did have a discussion with Bill Young, the regional director for peoples services at Terminix, about Reheiser's

---

[2] Reheiser notes that Terminix "objected to almost all of our requests for documents bearing on Reheiser's work performance." (Doc. 53, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p.13). While it is unfortunate that the parties could not come to an agreement on relevant documents, Reheiser should have exhausted all discovery procedural rules necessary to obtain these documents, including filing any appropriate motions to compel discovery. Reheiser actually withdrew his only motion to compel discovery on October 10, 2006. (Doc. 30).

complaints. (Doc. 57, Feemster Deposition, 25:10-12). Feemster claims that Young asked her to call Reheiser to discuss these allegations. She alleges that she attempted to reach Reheiser on several occasions, but "Joe would not talk to me or return my phone calls." (Doc. 57, Feemster Deposition, 25:12-14). Thus, while the issue of whether Terminix truly intended to investigate Reheiser's complaints in good faith is in dispute, this is not a material fact because the decision to terminate him did not have anything to do with the investigation (or lack thereof).

While it is true that "that the ADA imposes liability whenever the prohibited motivation makes the difference in the employer's decision, i.e., when it is a 'but-for' cause", McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1076 (11th Cir.1996)(citation omitted), there is no evidence that the circumstances underlying Reheiser's termination on November 6, 2001, had anything to do with his disability. There is no dispute that Reeves, Morrow, or anyone else at the Pensacola branch had the authority to allow Reheiser to remain employed at Terminix after he refused to sign the arbitration agreement. Although Reheiser claims that he was entitled to more time to consider whether to sign the arbitration agreement, Reheiser's own testimony makes it perfectly clear that he was not going to sign it under any circumstances:

> ...[Reeves said] you sign [the arbitration agreement] now or you're fired. And like I told him in light of the thing going on, the discrimination, harassment, various other things that I was not going to sign it. And then he asked me to rethink it, and I said the answer is, no. I said I'm not going to rethink it because of how I've been treated, and you do what you got to do. So, he filled the form out, put on there I quit, which that's not what he told me. He said if I didn't sign I was fired, and I put on there because he had already signed it and I put on there exactly what he said.

(Doc. 47, Reheiser Depo, 80:8-18).

Terminix has established that it had a company-wide policy which required every employee to sign the arbitration agreement or be fired. Reheiser has not submitted any evidence that Terminix knowingly retained any noncompliant employees after this policy was announced. Keeping in mind that " it is not the duty of the Court to second-guess

11

the wisdom of the employer's decision" so long as it is not motivated by discrimination, no reasonable jury could find that Terminix's firing of Reheiser was not based on a legitimate, non-pretextual reason.[3] See e.g. Alexander v. Fulton County, 207 F.3d 1303, 1340 (11th Cir. 2000).

### C. Retaliation

Reheiser also contends that the arbitration requirement was applied to him as retaliation because of his complaints about the harassment and discrimination, ultimately resulting in his termination. In order to establish a prima facie case of retaliation under the ADA, a plaintiff must demonstrate that 1) he was engaged in a statutorily protected activity, 2) he was subjected to an adverse employment action, and 3) the adverse employment action was causally related to his protected activities. See e.g. Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir.2002); Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir.2000). If the plaintiff can establish a prima facie case of retaliation, a presumption of retaliation is created, and " 'the burden shifts to the defendant to rebut the presumption by producing legitimate reasons for the adverse employment action." ' Sullivan v. National Railroad Passenger Corp., 170 F.3d 1056, 1059 (11th Cir.1999) ( quoting Raney v. Vinson Guard Service, 120 F.3d 1192, 1196 (11th Cir.1997)) (citation omitted), cert. denied, 528 U.S. 966 (1999)).

In showing that it had a legitimate reason for its actions, the defendant's burden is "exceedingly light." Perryman v. Johnson Prods. Co. Inc., 698 F.2d 1138, 1142 (11th Cir.1983) ( citing Texas Dept. Of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "The defendant only needs to produce evidence of a reason for its decision; it does not need to prove that it was actually motivated by that

---

[3] Further evidence of Terminix's intent can be found in the deposition testimony of Terry Reeves ("I mean I tried to get him to stay. I truly wanted him to stay. I mean I didn't want him to leave")(Doc. 59, Deposition of Terry Reeves, 59:13-16) and Jerry Morrow ("...I fired lots of people - - that was my job - - if they weren't doing their job. We were trying to save Joe...[b]ecause he was a long-term employee of the company")(Doc. 58, Deposition of Jerry Morrow, 58:12-14, 21-22).

explanation." Sermons v. Fleetwood Homes of Georgia, 227 F.Supp.2d 1368, 1380 (S.D.Ga.2002) ( citing Burdine, 450 U.S. at 254). The defendant's burden at this stage of the analysis is "merely one of production, not of proof." Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir.1982). "As long as the defendant articulates its reason with some specificity so that the plaintiff has a 'full and fair opportunity to demonstrate pretext,' the defendant's burden has been met." Sermons, 227 F.Supp.2d at 1380 ( quoting Burdine, 450 U .S. at 255-56).

    If the defendant produces legitimate reasons for its actions, "the presumption of retaliation disappears." Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 507 (11th Cir.2000). The plaintiff must then attack that reason 'head on and rebut it' so as to show that the reason[s][are] really pretext[s] for [retaliation] ." Sermons, 227 F.Supp.2d at 1381 ( quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir.2000)). Pretext can be established by evidence which "cast[s] sufficient doubt on the defendant's proffered [legitimate] reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct." ' Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994). Stated differently, the plaintiff may establish that he was the victim of [retaliation] "by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. The proffered explanation is unworthy of credence if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could disbelieve it. Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir.1997) ( quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996)) (citation and internal quotation marks omitted). In order to prove pretext, the plaintiff may offer "direct evidence ... in the form of statements and admissions or by circumstantial evidence in the form of comparative or statistical evidence." Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir.1989) ( citing Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir.1985)). The plaintiff may also establish pretext by showing that ECUA did not rely on the proffered explanations for its actions. See Israel v. Sonic-Montgomery FLM, Inc., 231 F.Supp.2d

1156, 1162 (M.D.Ala.2002). A plaintiff may not, however, establish pretext "merely by questioning the wisdom of the employer's reason" as long as "the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997) ("Federal courts do not sit to second-guess the business judgment of employers").

As it did in response to Reheiser's discrimination claims, Terminix does not make any argument that Rehesier has not met his burden to establish a prima facie case of retaliation. Therefore, for purposes of this order, the Court assumes that Reheiser has met his burden and established a prima facie case of retaliation.[4] Terminix argues that it had a legitimate, non-pretextual reason for terminating Reheiser - i.e. his adamant response that he would not sign the arbitration agreement.

For the reasons which have been discussed previously, Terminix has clearly provided a legitimate reason for its actions and Reheiser has not demonstrated any pretext on its part. Even assuming that there was a discriminatory bias against Reheiser, "an employer can avoid liability if it can prove that it would have made the same disputed employment decision in the absence of the alleged bias." Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001). There is no evidence in the record to suggest Terminix would have terminated Reheiser if he had signed the document. In fact, he was asked to "rethink" his decision to not sign before he was finally terminated, evidencing a clear intent (on Terminix's part) to provide Reheiser with a final opportunity to comply with the company's mandate and retain his employment. Unfortunately, Reheiser rejected that opportunity. Thus, Reheiser's retaliation claim must fail.

---

[4] It is clear that Reheiser has satisfied the first two prongs of his prima facie case - his formal complaints to Brackett constituted statutorily protected activity, and his termination qualified as an adverse employment action. However, Reheiser has not satisfied the third prong. Nonetheless, since Terminix chose to forego such an argument, the Court will restrict its analysis to the second and third parts of the retaliation framework.

**Conclusion**

    1. Terminix's Motion for Summary Judgment (Doc. 44) is granted.

    2. The clerk shall enter judgment dismissing Reheiser's claims with prejudice.

    3. All other pending motions are denied as moot.

    4. The clerk shall close the file.

**ORDERED** on March 15, 2007.

                                **/s/ Richard Smoak**
                                **RICHARD SMOAK**